UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JANIE FINK, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | CASE NO. 1:05-CV-17-TS |
| ) | |
| TOWER BANK AND TRUST ) | |
| COMPANY et al., ) | |
| ) | |
| Appellees. ) | |

**OPINION**

Appellant Janie Fink seeks review of the Bankruptcy Court's Order denying her Motion for Relief from Automatic Stay and for Abandonment. The order was issued on December 15, 2004, by Judge Grant of the United States Bankruptcy Court for the Northern District of Indiana. Jurisdiction is conferred on this Court by 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001(a). For the reasons that follow, the Court affirms the bankruptcy court's order.

**A.    Background**

The underlying facts in this case are undisputed. Appellant Janie Fink and David Burr Fink married on August 6, 1982. Years later they sought to divorce and on December 18, 1997, they entered into a Property Settlement Agreement. On December 23, 1997, the Finks divorced and the Adams Circuit Court approved the Property Settlement Agreement. On November 20, 2003, Mr. Fink filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Indiana under Cause No. 03-15247-REG. On July 16, 2004, Appellant Janie Fink filed a Motion for Relief from Automatic Stay and for

Abandonment. The Appellant later filed proof of claim on August 12, 2004.

The Appellant's motion sought relief from the automatic stay under 11 U.S.C. § 362(d). Section 362(d) states in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay– (2) with respect to a stay of an act against property under subsection (a) of this section, if– (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization . . . .

11 U.S.C. § 362(d). The property at issue was real estate owned by the Finks as tenants in common and located in the Grand Cayman Islands. Specifically, it was Mr. Fink's interest in the property that was at issue; the Appellant's share is unchallenged. It was agreed that the property was not necessary for effective reorganization and the main issue in contention was whether the debtor, Mr. Fink, had equity in the Grand Cayman Islands real estate. The Property Settlement Agreement provided that the property should be sold and that the Appellant would receive most of the proceeds, and if it was not sold by November 1, 1999, Mr. Fink was required to purchase the Appellant's interest in the property. The Appellant asserted that all of Mr. Fink's interest in the Grand Cayman property should be considered her property under the Property Settlement Agreement. The Appellant relied on Indiana case law holding that a court approved agreement requiring a party to sell property for the benefit of another gives the second party an equitable property right in the property to be sold. Thus, the Appellant reasoned, because Mr. Fink had an obligation to sell the Grand Cayman Islands property and give the proceeds to the Appellant, Mr. Fink did not have equity in the property.     The bankruptcy Trustee and others replied that the Appellant had no ownership interest or lien on Mr. Fink's interest in the Cayman Island property. The Trustee pointed out that the Property Settlement Agreement stated that after November 1, 1999, Mr. Fink no longer had to

sell the property for the Appellant's benefit and was only required to purchase her interest. Thus, they argued, Mr. Fink's obligation to sell the property had expired, Mr. Fink regained his interest in the real estate, and the Appellant's claim was for money and thus was dischargable debt.

The Bankruptcy Court held a hearing on the Appellant's Motion on December 8, 2004, and on December 15, 2004, it denied the Appellant's Motion for the reasons stated in court at the hearing. *In re Fink*, No. 03-15247, slip op. (Bankr. N.D. Ind. Dec. 15 2004). The bankruptcy court did not decide whether Mr. Fink had equity in the property. The court held that even assuming the Appellant was correct that Mr. Fink had no equity in the property, the Appellant had failed to show that the Trustee lacked equity in the property. (Judge Grant, Hr'g Tr. 19, Sept. 8, 2004.) To determine the rights of a non-debtor party against a bankruptcy trustee, the court stated that one must look first to the Bankruptcy Code. Turning to the Bankruptcy Code, the court raised § 544(a)(3), which gives a trustee the rights of a bona-fide purchaser without notice. (Hr'g Tr. 19–20.) The court cited a Seventh Circuit case that emphasizes the significance of this section. That case states:

> allowing the estate to benefit from property that the debtor did not own is exactly what the strong-arm powers are all about: they give the trustee the status of a bona fide purchaser for value, so that the estate contains interests to which the debtor lacked good title. The estate gets what the debtor could *convey* under local law rather than only what the debtor *owned* under local law.

*Belisle v. Plunkett*, 877 F.2d 512, 516 (7th Cir. 1989) (citation omitted).

Applying § 544(a)(3), the court put the burden on the Appellant not only to prove that Mr. Fink lacked equity in the property, but also to show that the Trustee lacked equity as a hypothetical bona-fide purchaser. The court reasoned that, even assuming that the Appellant was correct that the Property Settlement Agreement gave her equitable property rights in Mr. Fink's share of the

3

property, the Appellant still could not prevail, as it was uncontested that she did not record any interest in Mr. Fink's part of the Grand Cayman Islands property. Equitable liens and unrecorded interests do not defeat the rights of a bona-fide purchaser, and therefore they do not defeat the Trustee's rights. (Hr'g Tr. 20–24)

The court stated that the only way that the Appellant could win was if her interest in the real estate trumped the rights of a bona-fide purchaser without notice under Grand Cayman Islands law. The court held that the Appellant had the burden of demonstrating this to the court. Because she did not make any showing with regard to Grand Cayman Islands law, the court was unable to find that the estate lacked equity in the Cayman Islands property. Thus, the court denied the Appellant's motion to lift the automatic stay. (Hr'g Tr. 23–24.)

The December 15th Order is a final order. *See In re James Wilson Associates*, 965 F.2d 160, 166 (7th Cir. 1992) (stating that "orders refusing to lift or modify the automatic stay are held to be final"). On December 22, 2004, Ms. Fink filed a timely Notice of Appeal pursuant to 28 U.S.C. § 158(a). Ms. Fink filed her brief on February 3, 2005. The Trustee filed his Response Brief on February 15, 2005, Gloria Fink filed her Response Brief on February 18, 2005, and Tower Bank & Trust filed its Response Brief on February 18, 2005. The Appellant filed her Reply on February 25, 2005.

**B.     Standard of Review**

The Parties agree that, as a general matter, the standard of review for an appeal of a motion to lift stay under 11 U.S.C. § 362(d) is abuse of discretion. The Appellant contends, however, that this Court ought to review the Bankruptcy Court's judgment *de novo*, since the Parties stipulated to

4

the relevant facts at issue and the Bankruptcy Court's decision regarded only matters of law.

The Appellant cites *Smoker v. Hill & Associates., Inc.*, 204 B.R. 966, 971 (N.D. Ind. 1997), in support of her argument. According to the Appellant, the *Smoker* court applied a *de novo* standard of review to a bankruptcy court's decision to grant a motion for relief from an automatic stay because the bankruptcy court's determination was based on legal conclusions.

The Appellant's account of *Smoker* is unconvincing. The court in *Smoker* was not considering an appeal of an order denying a motion to lift an automatic stay. Rather, the issue on appeal was whether the bankruptcy court erred in granting Hill & Associates's motion for summary judgment:

> Although a decision granting or denying a motion to lift the automatic stay pursuant to 11 U.S.C. § 362(d) ordinarily may be overturned only upon a showing that the bankruptcy court abused its discretion, *In re C & S Grain Co., Inc.*, 47 F.3d 233, 238 (7th Cir. 1995); *In re Boomgarden,* 780 F.2d 657, 660 (7th Cir. 1985), the present action involves an appeal from an order granting summary judgment as to the creditor's request to lift the automatic stay. A bankruptcy court's decision to grant summary judgment is purely a question of law. *Investors Credit Corp. v. Batie (In re Batie),* 995 F.2d 85, 88 (6th Cir. 1993).

*Smoker*, 204 B.R. at 970–71. Accordingly, *Smoker* does not stand for the proposition that an appellate court should review *de novo* a bankruptcy court's decision on a motion to lift the automatic stay, even if the bankruptcy judge's determination was based on an interpretation of law.

The Appellant has not cited any case where a court has reviewed an order denying a motion to lift the automatic stay *de novo*. The Appellees, on the other hand, have cited several Seventh Circuit cases applying the abuse of discretion standard. The court in *In re Williams*, 144 F.3d 544 (7th Cir. 1998), held that appellate review of a bankruptcy court's refusal to lift a stay under § 362(d) is limited to whether the bankruptcy court abused its discretion. The court considered the

5

mandatory language of § 362(d), but stated that because "the bankruptcy court has discretion whether and to what extent it will grant relief from the stay" the abuse of discretion standard is proper. *In re Williams*, 144. F.3d at 546 (citing *In re C & S Grain Co.*, 47 F.3d 233, 237–38 (7th Cir. 1995), and *In re Mendoza*, 111 F.3d 1264, 1270 (5th Cir. 1997)); *see also In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985) ("Because 11 U.S.C. § 362(d) commits the decision of whether to lift the stay to the discretion of the bankruptcy judge, his decision may be overturned only upon a showing of abuse of discretion.") (citing *In re Holtkamp*, 669 F.2d 505, 507 (7th Cir. 1982)). In this circuit, the standard of review is clear: the Court will review the bankruptcy court's order denying the Appellant's motion for an automatic stay under § 362(d)(2) for abuse of discretion.

On appeal, a bankruptcy court will be overturned for abuse of discretion when "its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004). Under the abuse of discretion standard, a court will not "second-guess the decision of a trial judge that is in conformity with established legal principles and, in terms of its application of those principles to the facts of the case, is within the range of options from which one would expect a reasonable trial judge to select." *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 754 (7th Cir. 2002) (quoting *Am. Nat'l Bank & Trust v. Reg'l Transp. Auth.*, 125 F.3d 420 (7th Cir. 2002)). "A party appealing under [the abuse of discretion standard] bears a heavy burden, for 'a decision constitutes an abuse of discretion when it is not just clearly incorrect, but down-right unreasonable.'" *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002) (quoting *Cincinnati Ins. Co. v. Flanders Elec. Motor Svc.*, 131 F.3d 625, 628 (7th Cir. 1997)).

**C.     Analysis**

**(1)     *The Bankruptcy Court Did Not Abuse its Discretion by Considering § 544***

The Appellant argues that the bankruptcy court erred because it decided the case under § 544(a), even though the court recognized that the Trustee had not asserted his rights under § 544(a). The Appellant contends that because the Trustee has failed to avail himself of its rights under § 544(a), the court should not have considered this argument.

However, the Appellant has not cited any case law to support her claim that a bankruptcy court may not view a Trustee as a bona-fide purchaser until the Trustee raises the issue. The Appellant's interpretation runs contrary to § 544(a), which reads:

> The trustee shall have, *as of the commencement of the case*, and without regard to any knowledge of the trustee, the rights and powers of . . . a bona fide purchaser of real property . . . that . . . has perfected such transfer *at the time of the commencement of the case*. . . ."

11 U.S.C. § 544(a) (emphasis added). The language of § 544(a) states that a trustee enjoys the status of a bona-fide purchaser at the time of the commencement of bankruptcy proceedings. The Appellant's argument that this right vests only when the argument is waived cannot be squared with the language of the statute. The Court therefore finds that the bankruptcy court did not err by introducing § 544(a) and inquiring about the Appellant's rights against a bona-fide purchaser at the motion hearing. Furthermore, even if this was an error, the bankruptcy court's finding that § 544(a) was relevant was not based on a clearly incorrect legal principle.

**(2)     *The Bankruptcy Court's Decision is Premised on an Incorrect Legal Principle***

The Appellant next argues that even if the bankruptcy court did not err by applying § 544(a)(3), the court misapplied the burdens of proof, as it was the Trustee's burden to show that his

7

rights under § 544(a)(3) trumped the Appellant's right in the property. The Appellant is correct.

The Appellant brought a motion seeking relief from the stay under § 362, which allows relief from a stay regarding property if the debtor has no equity in the property and the property is not necessary for effective reorganization. 11 U.S.C. § 362(d)(2). Section 362(g) of the Bankruptcy Code states that the party requesting relief from the stay has only the burden to show the debtor lacks equity, not that the trustee lacks equity:

> In any hearing under subsection (d) . . . of this section concerning relief from the stay of any act under subsection (a) of this section—
>
> (1) the party requesting such relief has the burden of proof on the issue of the *debtor's equity* in property; and
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g) (emphasis added).

In the hearing regarding the Appellant's motion for relief from the stay, the bankruptcy judge required the Appellant as the party seeking relief from the stay to show not only that the debtor lacked equity in the property, but also that the Trustee's position as bona-fide purchaser was not superior to the Appellant's position:

> So the penultimate question is does the Estate have any equity in the Debtor's fifty percent ownership in this Cayman Islands real estate. The Movant specifically has the burden of proving the lack of equity. It's not the Estate's burden to prove equity; but, rather, it's the Movant's burden to show no equity. And in this instance, given the rights of the Trustee, I think it was incumbent upon the Movant to come forward and demonstrate that under the law of the Cayman Islands Janie Fink's interest in the real estate would trump the rights of a BFP without notice. And that hasn't been done. Nobody has talked about the law in the Cayman Islands.

(Hr'g Tr. 23.) The bankruptcy court misapplied § 362(g). As the party seeking relief, the Appellant only had to show Mr. Fink's (the debtor's) lack of equity; the Trustee had the burden as to all other

8

issues, including to demonstrate that "under the law of the Cayman Islands Janie Fink's interest in the real estate would trump the rights of a BFP without notice." ( Hr'g Tr. 23.)

The court's decision to deny the Appellant's motion for a stay is premised on this misapplication of the § 362(g) burdens of proof. The court assumed arguendo that the Appellant was correct in arguing that Indiana law gave her a property right in the Grand Cayman Island property:

> Yes, there may well have been a property right created between Debtor and former spouse, but the issue before this Court is whether the governing law . . . gives precedence to that property right, assuming that one exists, and I, for the purposes of this discussion, I am assuming that one does . . . .

(Hr'g Tr. 19.) Because § 362(g) states that the party moving for relief from a stay under § 362(d) has the burden only to show the debtor's lack of equity, and the court assumed that the debtor, Mr. Fink, had no equity, the court could not have denied the Appellant's motion on the ground that she failed to meet her burden. However, this is the ground on which the court based its decision:

> I'm assuming, since we both come from, you know, Anglo roots in our respective colonial heritages, that at least the fundamental origins of the law in the Cayman Islands are not radically different from those in Indiana and what the English Courts would have said the rights of a BFP are. But my assumption doesn't matter because, rather, it was the Movant's burden to show me what those rights were. And if they were any different from the rights of an Indiana BFP, you needed to show me how. That hasn't been done. Indeed, this whole matter has been litigated based upon the proposition that the Trustee and the Debtor are fungible and their rights are indistinguishable. And the Bankruptcy Code specifically states to the contrary.

(Hr'g Tr. 24.) The court was correct to consider § 544 and the issue of the Trustee's bona-fide purchaser rights, but the Appellant did not have the burden to show that its rights were superior to the Trustee's under Grand Cayman Island law.[1] The Trustee did. The Trustee made no argument

---

[1] The law of the Grand Cayman Islands determines whether the Trustee's rights as a hypothetical bona-fide purchaser are superior to Ms. Fink's rights under the Property Settlement Agreement because the location of the property is in the Grand Cayman Islands. *In re Bridge*, 18 F.3d 195, 200 (3d Cir. 1994) ("It is thus clear from the legislative history of the 1978 Act and

9

and offered no evidence regarding Grand Cayman Island law sufficient for the court to hold that the Trustee's rights as a bona-fide purchaser under § 544 were superior to the interest the court assumed the Appellant to have in the property. Because the court's decision regarding the allocation of the burden of proof is premised on an incorrect legal principle, the denial of the Appellant's motion was an abuse of discretion.

**(3)**     *The Bankruptcy Court's Misapplication of § 362(g) Was Harmless Error*

Having determined that the Bankruptcy Court erred by holding the Appellant to a higher burden of proof than the law requires, this Court now must decide whether the error was harmless. Federal Rule of Civil Procedure 61, applied to bankruptcy proceedings by Bankruptcy Rule 9005, states:

> No error . . . or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground . . . for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.

Fed. R. Civ. P. 61. To determine whether refusing to disturb the bankruptcy court's order is inconsistent with substantial justice, the Court will consider whether the bankruptcy court's order declining to alter the stay was justified despite the court's error.

For the Appellant to have prevailed before the bankruptcy court, she had to show that, under Indiana law, the debtor had no equity in the property. 11 U.S.C. § 362(d)(2). Equity in property is

---

from case law that . . . the scope of these avoidance powers vis-a-vis third parties is governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing."); *In re Graham*, 110 B.R. 408, 411 (S.D. Ind. 1990) ("Whether the trustee qualifies as a bona fide purchaser when seeking to avoid a transfer is a question to be determined by looking at state law.").

defined as "the difference between the value of the property and all encumbrances against it." *In re Jones*, 119 B.R. 996, 1005 (Bankr. N.D. Ind. 1990). The Appellant argued that Mr. Fink had no equity in the property because its value was only $1,350,000 (R. Entry 13, Bankruptcy Docket 91; Stipulation of Facts ¶ 6), and Mr. Fink was required to pay the Appellant at least $1,600,000 from the proceeds of the sale. (R. Entry 24, Bankruptcy Docket 76; Mot. for Relief from Automatic Stay, Ex. A, Property Settlement Agreement, ¶ 8.) The Plaintiff claimed that Mr. Fink's obligation was not an unsecured debt because the Property Settlement Agreement allocated to her property rights to Mr. Fink's interest in the real estate.

The bankruptcy court assumed for the sake of argument that the Appellant's position was correct and denied her motion on other grounds, never considering the merits of the Appellant's position. Because no issues of fact are in dispute, this Court is in a position to resolve the issue. If the Appellant's argument fails, the bankruptcy court's error would be harmless and the court's order could be affirmed.

a. *Indiana Law:* Cowart v. White

The Appellant argues that the property settlement agreement gives her an equitable property right in the Grand Cayman Islands property. She relies on *Cowart v. White*, 711 N.E.2d 523 (Ind. 1999). In *Cowart*, a divorce decree ordered that two properties were to be sold and the proceeds divided between the husband and the wife. *Id.* at 527. Eight days later, the husband filed for bankruptcy without selling the property. Later, the wife sought to have the husband held for contempt for not following the divorce decree and the trial court agreed. *Id.* On appeal, the Supreme Court of Indiana held that because the husband was under a court order to sell the two properties,

11

he did not owe the wife a debt; rather the wife had a property interest in the proceeds of the sale that could not be disturbed in bankruptcy. *Id.* at 528.

The *Cowart* court offered little explanation as to how it came to its conclusion. It reasoned that an "ongoing obligation to sell and divide the proceeds of the sale with [the other party] was not a 'debt' as defined by the bankruptcy code." *Id.* "Otherwise stated, the trial court's 1996 decree awarded [non-debtor spouse] a property right in the proceeds that could not be disturbed by [debtor spouse's] bankruptcy." *Id.* The court cited two cases reaching similar results. The court in *In re Peterson*, 133 B.R. 508, 511 (Bankr. W.D. Mo. 1991), ruled that a debtor obligated to sell real estate and divide the proceeds with the non-debtor spouse holds the real estate in constructive trust for the non-debtor spouse. *Id.* The second case, *In re Marriage of Seligman*, 18 Cal. Rptr. 2d 209, 214 (Cal. Ct. App. 1993), involved the division of personal property items according to court order. The court stated that "a debtor's obligation which requires performance, not payment, and which performance cannot be converted into a right to a monetary payment, is not a 'claim' within the meaning of 11 United States Code Annotated section 101(5)(A)." *Id.* The two cases reached the same result, though on different rationales, and *Cowart* relied on both. Whether because of constructive trust or interpretation of the bankruptcy code, the *Cowart* court held that a court order requiring one party to sell his or her property for the benefit of another gives the second party an equitable property right to the first party's property that is not affected by the first party's bankruptcy.

The Trustee does not dispute this interpretation of *Cowart*. (Trustee Br. 11.) ("*Cowart* held that a court-ordered obligation to sell real property and divide the proceeds of the sale is a property right rather than a 'debt' to make payment as defined by the Bankruptcy Code.") Tower Bank argues that *Cowart* only holds that a divorce court continues to have contempt power over the debtor,

12

(Tower Bank Br. 5), but that is not a fair reading of the case. Applying *Cowart* to this situation, if the court-approved agreement between the Appellant and Mr. Fink puts an obligation on Mr. Fink to sell the Grand Cayman Islands property and give the proceeds to the Appellant, then the Appellant has a property interest in the property that may not be disturbed in bankruptcy.

b.      *The Debtor Had No Obligation to Sell the Grand Cayman Island Property after November 1, 1999*

Settlement agreements, such as the one entered into by the Finks, are contracts to which Indiana courts apply "the general rules applicable to the construction of contracts." *White v. White*, 819 N.E.2d 68, 70 (Ind. Ct. App. 2004). "Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions." *Id.* "Where the terms of a contract are not ambiguous the meaning of that contract is a matter for the court to decide as a question of law." *Fort Wayne Cablevision v. Ind. & Mich. Elec. Co.*, 443 N.E.2d 863, 867 (Ind. Ct. App. 1983).

The relevant part of the agreement states:

> 8.  Husband and Wife are the owners of real estate on Grand Cayman Island, and that the aforesaid real estate is currently listed for sale. The parties shall continue to own real estate as tenants in common, and that the real estate shall continue to be listed for sale.
>
> Upon the sale and closing of the real estate, the following payments shall be deducted from the proceeds of the sale:
>
> > a.  Any real estate commissions;
> > b.  Title Insurance and survey expenses;
> > c.  Any other closing costs or expenses;
> > d.  Any federal and/or state taxes resulting from the sale of real estate.
>
> Following the payment of the aforesaid selling expenses and taxes, the remaining net proceeds shall be divided among the parties as follows. Wife shall receive from the net proceeds, the sum of $1,700,000.00. In the event that the net proceeds exceed $1,700,000.00,

>   the parties shall divide the excess equally. In the event that the net proceeds are less than $1,700,000.00, then Husband shall pay Wife the net proceeds plus a sum equal to one-half of the difference between the net proceeds and $1,700,000.00; however in no event shall Wife receive less than $1,600,000.00, which sum shall be paid in cash or a combination of cash, or a combination of cash and liquidable assets, within thirty (30) days of the date of closing.
>
>   Until such time that the real estate is sold, each party shall have equal access to the property and that the parties will equally share the cost of maintaining the property, including maintenance, taxes, insurance and other expenses.
>
>   In the event that the property is not sold by November 1, 1999, Husband shall purchase Wife's interest in the real estate for the sum of $1,700,000.00 in cash, or a combination of cash and liquidable assets which is acceptable to Wife. Wife shall execute all documents necessary to effectuate the transfer of her interest to Husband.
>
>   Except for the capital gains tax withheld at the time of the closing, Husband shall indemnify Wife from any and all tax consequences incurred as a result of the sale of the Grand Cayman Island real estate, as well as any tax consequence resulting from her receipt of the net sale proceeds, including but not limited to, any tax consequences as a result of Wife returning such proceeds to the United States after payment.

(Property Settlement Agreement ¶ 8.) Reviewing the settlement agreement, the Court finds no ambiguity in its terms. The agreement states that if the property had not yet been sold by November 1, 1999, Mr. Fink was required to purchase the Appellant's interest for $1,700,000. Mr. Fink did not have to sell the property after that date and could have paid the Appellant with funds from sources other than proceeds from the sale of the property.

The Appellant argues the statement "the real estate shall continue to be listed for sale" continues to apply after November 1, 1999, giving Mr. Fink a continuing obligation to sell the property. This argument makes little sense in the context of the agreement. There was no reason for the parties to require Mr. Fink to sell the property after November 1, 1999, when they had agreed that Mr. Fink would buy the Appellant's interest after that date. Mr. Fink's obligation to the Appellant after November 1, 1999, did not depend on the sale price of the property as it did prior

to November 1, 1999. If Mr. Fink sold the property after November 1, 1999, no matter what the price, the Appellant would not get any more or less than $1,700,000. Mr. Fink's obligation to the Appellant after November 1, 1999, was not to pay the Appellant money from a specific source as it was prior to November 1, 1999. Mr. Fink could have paid the Appellant $1,700,000 from any source and complied with the agreement.

Finally, the agreement is worded in such a way that makes the Appellant's argument impossible to accept. The agreement first states: "the real estate shall continue to be listed for sale." (Property Settlement Agreement ¶ 8.) Later, the agreement explicitly states what will happen if the real estate is not sold by November 1, 1999, despite continuing to be listed for sale: "In the event that the property is not sold by November 1, 1999, Husband shall purchase Wife's interest in the real estate for the sum of $1,700,000.00." (Property Settlement Agreement ¶ 8.) Mr. Fink's obligation to sell the property terminates and he assumes the obligation to buy out the Appellant. Thus, when Mr. Fink filed for bankruptcy on November 20, 2003, his only obligation to the Appellant was to purchase her interest in the property for $1,700,000. Because Mr. Fink was not obligated to sell the property and pay the Appellant from the proceeds, the Appellant has no property right in Mr. Fink's interest in the Grand Cayman Islands property under *Cowart*.

The Appellant cites *Fackler v. Powell*, 2004 WL 2348305 (Ind. Ct. App. Oct. 20, 2004), as support for her interpretation of the settlement agreement. In *Fackler*, an agreement settling a divorce action required the husband to assign a note to his wife, and that upon payment by the husband, the wife was to transfer the note back to the husband. The *Fackler* court held that the husband had no interest in the note until he paid the wife. The Appellant argues that her property right in the Grand Cayman Island property is not extinguished until Mr. Fink purchases her interest

15

just as the wife in *Fackler* retained her property right in the note until the husband paid her.

*Fackler* has no relevance to the interpretation of the agreement in this case. In *Fackler*, the dissolution agreement identified the note as being in the amount of $23,000 when the note was for $23,000 and up to $80,000 in building costs. *Fackler*, 2004 WL 2348305 at 480. The husband relied on the failure of the dissolution agreement to cite the full amount of the note to avoid full payment on the note. The court held simply that there was no ambiguity in the agreement and that the husband was required to pay the wife the full amount on the note, despite the agreement's failure to cite the full amount of the note. *Id.* at 481. The *Fackler* agreement explicitly conveyed property rights to the wife; here, the Property Settlement Agreement did not explicitly convey any property rights to the Appellant. Rather, whether the Appellant has property rights depends on whether the agreement required Mr. Finks to sell the property and give the proceeds to the Appellant. The Agreement explicitly did not do so.

*Cowart* held that where a court order requires a party to sell property and divide the proceeds with another party, the second party has an equitable property interest in the underlying property. Here, as of November 1, 1999, the Property Settlement Agreement did not require Mr. Fink to sell the Grand Cayman Islands property and give the proceeds to the Appellant. Thus, the Appellant had no interest in Mr. Fink's part of the property and has failed to show that Mr. Fink lacked equity in the property under 11 U.S.C. § 362(d)(2).

**D.     Conclusion**

The Appellant is correct in arguing that the bankruptcy court erred by misapplying § 362(g)'s

instructions regarding her burden of proof. However the error was harmless, as the Appellant cannot show that the debtor, Mr. Fink, lacks equity in the Grand Cayman Islands property. The Appellant has only a claim against the debtor, Mr. Fink, for money. An obligation arising from a property settlement to pay money is clearly dischargable in bankruptcy. *Nichols v. Hensler*, 528 F.2d 304, 307 (7th Cir. 1976) ("If the debt is determined to be one arising under a property settlement, it is discharged by bankruptcy."), and the court was correct to refuse to grant relief from the automatic stay.  Accordingly, the bankruptcy court's order is AFFIRMED.

                                                  S/ Theresa L. Springmann
                                                  THERESA L. SPRINGMANN
                                                  UNITED STATES DISTRICT COURT